**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

PAUL REED,                                          Case No. 1:13-cv-268

          Plaintiff,                                Beckwith, J.
                                                    Bowman, M.J.
     v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Paul Reed filed this Social Security appeal in order to challenge the Defendant's determination that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents five claims of error, all of which the Defendant disputes.  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I.  Summary of Administrative Record**

In February 2010, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning on January 4, 2008 due to physical impairments. He subsequently amended his disability onset date to November 1, 2008.  After Plaintiff's application was denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  At a hearing held in October 2011, ALJ Deborah Smith heard testimony from Plaintiff and from a vocational expert.  (Tr. 40-60).  On November 16, 2011, the ALJ denied Plaintiff's application in a

1

written decision, concluding that Plaintiff was not disabled.  (Tr. 18-26).  The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Defendant's final determination.

Plaintiff was 49 years old at the time of his alleged disability onset date, but had advanced age categories to closely approaching advanced age by the time of his hearing.  He has a high school education, and prior work as a machine operator and forklift operator, but had not engaged in substantial gainful activity since his alleged disability onset date.  (Tr. 20, 25).

Plaintiff claims that he is disabled due to his bilateral symptoms of carpal tunnel syndrome, lingering effects of prior shoulder surgery, and chronic pain.  He testified that he currently has significant carpal tunnel symptoms with his left hand, and planned to undergo surgical treatment for that condition in the near future. (Tr. 41). Plaintiff previously had CTS release surgery on his right wrist in 2002, and right shoulder surgery in 2004.  Despite discounting Plaintiff's allegations regarding the severity of his pain and of his carpal tunnel limitations, the ALJ nevertheless concluded that Plaintiff has the severe impairments of: "impairment of the right upper extremity due to a history of right carpal tunnel release in 2002 and right rotator cuff repair in 2008, and arthritic back pain." (Tr. 20).   The ALJ found that Plaintiff's impairments did not alone, or in combination with any other impairments, meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 21).  Rather, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, with the following additional limitations:

> [H]e has a limited ability to push or pull in the upper extremities (push/pull 10 to 20 pounds only).  He can do only frequent overhead lifting with the

right upper extremity, and can do only do [sic] frequent fingering
bilaterally.

(Tr. 22).   Although the ALJ determined that Plaintiff could not perform his past relevant work, based upon the record and the testimony of the VE, the ALJ concluded that Plaintiff remained capable of performing other jobs that exist in significant numbers in the national economy, including but not limited to the representative jobs of cleaner and general cashier.   (Tr. 26).   Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB.   (*Id.*).

On appeal to this Court, Plaintiff argues that the ALJ erred: (1) by failing to find that carpal tunnel syndrome in his left wrist and hand constituted an additional severe impairment; (2) by failing to include more limiting hand use restrictions in his hypothetical question to the VE; (3) by failing to comply with the treating physician rule; (4) by failing to adequately consider Plaintiff's work history when determining his credibility; and (5) by failing to fully consider the number of days Plaintiff would miss each month.   For the reasons that follow, I find no reversible error.

**II.  Analysis**

**A.  Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.   *See* 42 U.S.C. §1382c(a).   Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.   *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a

significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.   However, a plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability or supplemental security benefits.  *See* 20 C.F.R. § 404.1512(a).

### B.  Plaintiff's Assertions of Error

### 1.  Failure to Find Bilateral CTS rather than Right Side CTS at Step 2

The ALJ included only Plaintiff's right carpal tunnel syndrome ("CTS") in the list of "severe" impairments at Step 2 of the sequential analysis.  Plaintiff first argues that the evidence supports a finding of bilateral CTS as a severe impairment.  He contends that the degree of CTS in his left hand also reflects "more than minimal" interference with his ability to engage in basic work-related activities.

As Defendant is quick to point out, an error alleged at Step 2 of the sequential analysis is considered harmless so long as the ALJ found that the claimant had other severe impairments and proceeded with the full sequential analysis.  *See Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987).  In fact, even though the ALJ did not specifically list Plaintiff's "bilateral" CTS, the ALJ actually included bilateral upper extremity limitations in the hypothetical provided to the vocational expert, based upon the ALJ's explicit acceptance of a consulting physician's determination that Plaintiff has bilateral CTS.  Thus, the ALJ limited Plaintiff's bilateral ability to push/pull up to 10 to 20 pounds, and also limited his bilateral fingering ability to "frequent."   The sole limitation that was found to apply only to the right arm was the limitation on overhead lifting, which was limited to "frequent" on the right.   Based on *Maziarz* and the record presented, the

undersigned agrees that the alleged error of the ALJ to list Plaintiff's left hand/wrist CTS as a "severe" impairment at Step 2 does not form a sufficient basis for remand.

### 2.   Failure to Include Additional RFC Limitations

Plaintiff's second and third assertions of error complain that the ALJ failed to include additional limitations in the hypothetical provided to the vocational expert.  The testimony of a vocational expert can constitute substantial evidence to support a non-disability finding, but only to the extent that the hypothetical accurately portrays a claimant's impairments or residual functional capacity.  *See Varley v. Sec'y of HHS*, 820 F.2d 777 (6th Cir. 1987).  In this case, Plaintiff argues in his second claim that the ALJ erred by failing to include more restrictive limitations relating to his bilateral CTS. Plaintiff asserts that more restrictive limitations were supported by medical records, the opinions of his treating physicians, and Plaintiff's own testimony.   Plaintiff's third assertion of error – that the ALJ failed to give "controlling weight" to opinions of two treating physicians – is a variation on the same theme in that it also advocates for additional hand limitations, in addition to multiple other limitations.

Plaintiff argues that had the ALJ incorporated more restrictive bilateral hand limitations, Plaintiff would have been found to be disabled.  In his reply memorandum, Plaintiff specifically argues for the first time that the ALJ should have determined that he could use his hands to "only occasionally" or "less than occasional[ly]." (Doc. 14 at 5). Plaintiff asserts that the more restrictive hand use would have eliminated the representative jobs to which the VE testified.  For the reasons discussed below, the undersigned finds no error in the failure of the ALJ to incorporate additional bilateral hand limitations or any other additional RFC limitations.  The RFC determined by the

ALJ, and used in the hypothetical posed to the VE, is well supported by substantial evidence in the record.

**a.    Medical Evidence Relating to Bilateral CTS**

Before turning to the specific evidence in the record presented, the Court takes judicial notice of the fact that carpal tunnel syndrome is a relatively common diagnosis. The National Institute of Neurological Disorders and Stroke, under the auspices of the National Institutes of Health, states on a Carpal Tunnel Syndrome Fact Sheet that "[r]ecurrence of carpal tunnel syndrome following treatment is rare," and that the "majority of patients recover completely." *See* http://www.ninds.nih.gov/disorders/carpal_tunnel/detail_carpal_tunnel.htm, publication date December 30, 2013, accessed on March 13, 2014. The temporary use of splints or braces to immobilize the wrists is the most common form of treatment prescribed for CTS. *Id.*

Defendant argues that there is "little evidence" of any CTS limitations. Defendant specifically points to evidence from Plaintiff's consultative examination by Dr. Fritzhand on April 28, 2010, which showed almost no clinical evidence of any impairment from CTS on either side. (Tr. 349-355). In addition, in May 2010, Dr. Brock completed a records review and assumed that Plaintiff had "bilateral" CTS based upon Dr. Fritzhand's consultative exam, but nevertheless noted no evidence of muscle atrophy, and that Plaintiff's grasp, manipulation, pinch, fine coordination, and range of motion were all normal. (Tr. 357-358).

Plaintiff points to three earlier records from 2002 and 2007 that reflect left wrist or hand complaints. However, because those records reveal fleeting complaints that

significantly pre-date Plaintiff's alleged disability onset date, the undersigned does not find them to constitute substantial evidence of any left hand/wrist CTS limitation prior to 2010.  (Tr. 209, 483, 485).  Further, some findings relating to Plaintiff's left fingers relate to a childhood injury, when he cut his left hand and required surgery.  Those findings are presumed not to cause any work-related limitation given that the injury did not impede his prior work. (Tr. 353, 593).  Aside from the 2002 and 2007 notes or reference to his childhood injury, substantial evidence in the record confirms the *absence* of reported CTS impairment relating to his left wrist or hand prior to 2010, with complaints limited to the right hand/wrist.  (*See, e.g.,* 297, 349-358, 409, 429, 445, 550).

In contrast to the cited records, Plaintiff relies chiefly upon records generated later in 2010, when a diagnosis of bilateral CTS and/or some left-sided CTS complaints began to appear.  For example, an October 22, 2010 record shows positive Tinel and Phalen signs on the left hand (though negative test results were subsequently reported in 2011),[1] and October 2010 records also confirm reported symptoms in the left hand. (Tr. 534, 536, 537). A left hand EMG test showed an abnormal electrodiagnostic study on November 4, 2010, and the clinical interpretation indicated "moderately severe left median neuropathy at the wrist, carpal tunnel syndrome."  (Tr. 517-519).  A month later on December 17, 2010, Dr. John Gallagher on examination found decreased discrimination, particularly on the left index and middle fingers, which he attributed to moderately severe left hand CTS with some loss of sensation. (Tr. 528, 530).  In fact, the undersigned agrees that multiple 2010-2011 medical records reference mostly the

---

[1]See Tr. 547, record dated August 16, 2011.

diagnosis of – but also some reported symptoms of - bilateral CTS.[2]  (Tr. 280, 406-407, 411, 544-549, 559, 564, 567, 568, 572).

An EMG study dated October 4, 2012 also shows bilateral CTS, with the left side described as "moderate to severe" as compared to the more "severe" right side.  (Tr. 593-596).  However, the 2012 EMG study was not filed until after the hearing before the ALJ, at the Appeals Council level.  Because Plaintiff does not seek a "sentence six" remand to place the new evidence before the ALJ, it is not considered for purposes of the undersigned's substantial evidence review.  *See Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001); *Cotton v. Sullivan*, 2 F. 3d 692, 696 (6th Cir. 1993).

Regardless, the existence of some corroborative records that reflect a bilateral CTS diagnosis and some left hand symptoms in 2010 and 2011 does not mean that the ALJ's analysis is unsupported.  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance."  *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The fact that substantial evidence may exist to support a contrary result is not grounds for reversal, so long as "such relevant evidence as a reasonable mind might accept as adequate to support" the decision reached by the Commissioner.  *Id.*

The mere diagnosis of bilateral carpal tunnel syndrome beginning in the latter part of 2010 does not mean that the ALJ was required to include additional work related limitations. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.").  Here,

_____

[2]On April 21, 2011, however, Plaintiff again reported only right-sided hand/wrist pain.  (Tr. 558).  *See also generally* Tr. 510-514 and Tr. 587-591, discussed below, in which Plaintiff's own treating physicians referenced only right-handed CTS in 2010 and 2011.

substantial evidence supports the relatively modest bilateral limitations relating to CTS determined by the ALJ, as well as the ALJ's decision not to include other limitations. For instance, a physical RFC dated August 30, 2010 by Plaintiff's own treating physician, Dr. Jose Martinez, clearly notes only CTS in Plaintiff's right hand and wrist. (Tr. 510-514).  Similarly, Dr. John Gallagher states on December 17, 2010 that despite the November 2010 EMG showing "moderately severe left hand carpal tunnel syndrome with some loss of sensation," and Plaintiff's complaints of pain and numbness in two fingers, exacerbated by activity, Plaintiff had no atrophy and "no loss of strength yet at this time."  (Tr. 528).  In other words, Dr. Gallagher specifically noted some mild complaints of pain and numbness but no functional impairment.  While differences were noted relating to the measurements of two fingers, Dr. Gallagher also noted that "[i]t is not clear whether this is partially related to his old [childhood] laceration." (Tr. 528; *see also* Tr. 534).

        In addition, Dr. Fritzhand performed a consulting examination in April 2010 and found normal range of motion in both arms, and normal manipulative ability, with normal flexion in both wrists and elbows.  (Tr. 349-355).  Although Plaintiff's right forearm and bicep measured smaller than his left, there was no evidence of atrophy. (Tr. 354).  Dr. Fritzhand opined that Plaintiff had "no difficulty" reaching, grasping, or handling objects. (Tr. 355).  In May 2010, Dr. Brock reviewed Plaintiff's records and limited Plaintiff to "frequent" overhead lifting and "frequent" bilateral fingering, also noting that Plaintiff had no evidence of muscle atrophy and records showing normal grasp, manipulation, pinch, fine coordination and range of motion.  (Tr. 357-358).  Plaintiff also had full strength

"throughout" both right and left upper extremities, including both hands, and full range of motion on examination in July 2011. (Tr. 548-549).

### b. Treating Physicians Versus Consulting Physician

Attempting to counter the substantial evidence that supports the RFC determined by the ALJ, Plaintiff's third assignment of error suggests that remand is required based upon the ALJ's failure to give "controlling weight" to the RFC opinions of two treating physicians, Drs. Martinez and Kaleem. Both physicians essentially opined that Plaintiff could not use his upper extremities at all, and further offered additional extreme functional limitations that would preclude all work.

The opinion of a treating physician must be given "controlling weight" so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§404.1527(c)(2); 416.927(c)(2). On the other hand, opinions on the ultimate issues of disability, or concerning an individual's RFC, are not the type of opinions that must be given "controlling weight" insofar as those issues are "reserved to the Commissioner." *See* 20 C.F.R. §404.1527(d)(2). The undersigned finds no error in the ALJ's determination that the opinions of Drs. Martinez and Kaleem were not entitled to controlling weight. To the extent that Plaintiff contends that the ALJ erred in giving more weight to consulting physicians, the undersigned also finds no error.

### i. Dr. Martinez

Plaintiff's treating physician,[3] Dr. Jose Martinez, completed a physical RFC form dated August 30, 2010 that reflects CTS *only* in Plaintiff's right wrist and hand, with no

---

[3]Plaintiff testified that he treated with Dr. Martinez and Dr. Kaleem for pain management. (Tr. 46).

reference either to any left-handed or bilateral CTS. (Tr. 510-514). The RFC repeatedly refers to "moderate pain in the **right** wrist" and tenderness of the "right" hand with intermittent swelling, with a diagnosis of CTS in the "**Rt**. wrist/hand since injury of 2002." (Tr. 510, emphasis added).  Dr. Martinez opines that Plaintiff's pain level is "high" and exacerbated by depression and anxiety, as well as unspecified "psychological factors affecting physical condition." (Tr. 511). Nevertheless, he states that medication management helps "to decrease pain to 40% Pain level is 8/10 at worst and 4-5/10 at least." (Tr. 511).  Despite only "moderate" pain that is helped by medication, Dr. Martinez opined that Plaintiff's "constant pain" from his right hand/wrist decreases his attention and concentration, and increases his stress and fatigue to the point that he is "incapable of even 'low stress' jobs." (Tr. 511).  Dr. Martinez further indicates that Plaintiff can stand for not more than 10 minutes, can stand/walk fewer than 2 hours in an 8 hour workday, and can sit for only 2 hours in the same 8 hour period. (Tr. 512).  He has checked a box indicating that Plaintiff would miss more than four days per month of work "as a result of the impairments or treatment."  (Tr. 514).

Given the physician's repeated references to the CTS in Plaintiff's dominant right hand with absolutely no reference to any complaints or findings of left CTS, it is surprising – to the point of being incomprehensible – that Dr. Martinez goes on to opine that Plaintiff has "0%" use of his left hand, fingers and arm.   Even more surprising, Dr. Martinez opines that Plaintiff has greater use - 5-10% - of his right hand, fingers, and arm.  These opinions are in fact so contradictory that the undersigned wonders if Dr. Martinez intended to offer his opinion on the percentage of impairment rather than of

use; to wit, that Plaintiff's right hand, fingers and arm were impaired 5-10% and his left not at all.

Assuming that Dr. Martinez meant what he said, the ALJ gave Dr. Martinez's assessment "almost no weight" for the following reasons:

> First of all, Dr. Martinez no longer sees the claimant, and when he did, he only treated the claimant for problems in the right hand. There is no reasonable basis for finding that right hand difficulties would affect the claimant's ability to sit, stand, or walk. There also is no mention in the treatment record from Dr. Martinez…of any left hand difficulties nor of any psychological factors such as depression or anxiety. In other words, Dr. Martinez listed significant limitations that could not be expected to arise from the claimant's established condition, including limitations arising out of psychological conditions that are not within his area of medical expertise. Virtually no weight can be given to such an assessment.

(Tr. 23). Having reviewed the records at issue including but not limited to Dr. Martinez's RFC form, the undersigned can find no error in the ALJ's thorough analysis. The reasons provided by the ALJ satisfy the regulatory standard. *See* 20 C.F.R. §404.1527(c)(2) (dictating that "good reasons" be given for the weight given to "your treating source's opinion.").

In addition to the multiple reasons given by the ALJ, substantial evidence supports the ALJ's rejection of the opinions as not entitled to controlling weight, because the opinions were clearly not "well-supported," and were not consistent with the other substantial evidence in the record. There is no evidence of treatment for anxiety, depression or any other psychological condition in this case. Despite some evidence of a diagnosis of bilateral CTS in 2010, the medical records offer no support for more significant hand/wrist/arm work limitations resulting from that diagnosis. Last, Dr. Martinez opines in part on ultimate issues that are reserved to the Commissioner.

### ii.  Dr. Kaleem

An undated physical RFC form completed by Dr. Kaleem, that Plaintiff's counsel states was received on October 4, 2011, is remarkably similar, and was rejected by the ALJ for similar reasons.  In the narrative portion of the form, Dr. Kaleem lists Plaintiff's *only* symptoms in relation to his right hand/wrist, with no diagnosis or symptoms noted that relate to either bilateral CTS or to the left hand/wrist.  He lists symptoms as: "parathesis R wrist, first 3 digits, R hand with constant pain/weakness." (Tr. 587).  He states that Plaintiff has "moderate pain R wrist" which increases with "use of right hand." Clinical signs are also listed as "constant R wrist/hand pain." (Tr. 587).  Like Dr. Martinez, he states that medication management with narcotics is helping to decrease Plaintiff's pain. (Tr. 588).  In complete agreement with Dr. Martinez, he checks boxes on the RFC form to opine without any supporting evidence that Plaintiff suffers from depression, anxiety and other psychological factors that worsen his patient's physical condition, concludes that Plaintiff is incapable of even "low stress" jobs, (Tr. 588), and that Plaintiff will miss more than four days of work per month.  (Tr. 591).  Also like Dr. Martinez, he states that Plaintiff can sit not more than 15 minutes at a time, can stand for only 10 minutes at a time, with standing/walking limited to "less than 2 hours," and sitting limited to "about 2 hours."  (Tr. 589).  Last but not least, he shares Dr. Martinez's identical (and incongruous) opinion that Plaintiff has "0%" ability to use his left hand, fingers, or arm, with a slightly greater (5-10%) ability to use his right hand, fingers or arm.  (Tr. 591).

In his reply memorandum, Plaintiff suggests that the two physicians' opinions are nearly identical in part because "Dr. Martinez retired and Dr. Kaleem took over from the

same facility [as]… Plaintiff's primary care physician."  (Doc. 14 at 5). Be that as it may,

the ALJ rejected Dr. Kaleem's RFC opinions for the following reasons:

> This assessment suffers from many of the same deficiencies as the assessment provided by Dr. Martinez.  Dr. Kaleem initially described the claimant's right hand problems as "moderate," a description which does not seem consistent with the extreme limitations given in his assessment. Moreover, he provided no explanation for how such difficulties in the right hand would affect the claimant's ability to sit, stand, and walk.  Dr. Kaleem stated that the claimant is not capable of working secondary to his right hand pain, but in fact the claimant worked for several years after his initial injury in 2002 at a medium job where he was on his feet and operating machinery, then in a sit down job as a forklift operator, until he was laid off because business was slow.  Notably, Dr. Martinez [sic] provided no physical findings to support his assessment, nor did he cite the results of any objective testing upon which he relied to form his opinion.[4]  He did not state how long he has been treating the claimant, nor did he mention anything that may have happened to the claimant's right wrist and hand in 2008 to account for such extreme current limitations even though the claimant was able to work for several years after his initial 2002 injury. This assessment can be given no weight.

(Tr. 23-24).  Again, the undersigned concurs with the ALJ's analysis, and concludes

both that the ALJ has complied with the regulatory standard requiring her to provide

"good reasons" for giving Dr. Kaleem's RFC opinions "no weight," and that substantial

evidence supports her assessment.

### iii. Dr. Brock

The ALJ gave "significant weight" to the RFC opinions of an agency non-

examining physician, Dr. Brock.  Dr. Brock's May 2010 RFC assessment was based in

part on the consulting exam performed by Dr. Fritzhand a month earlier, and was

subsequently affirmed by a second agency physician in August 2010. (Tr. 515).  In

contrast to the opinions of Drs. Martinez and Kaleem, Dr. Brock opined that Plaintiff

---

[4]The undersigned assumes that the reference to Dr. Martinez in this sentence is a typographical error. However, the analysis holds true regardless of whether applied to Dr. Martinez or to Dr. Kaleem.

could stand and sit for about six hours in an eight hour work day. (Tr. 358). The ALJ

described Dr. Brock's assessment as follows:

> [T]he claimant's primary diagnoses include cervical and lumber degenerative disc disease, with secondary and other diagnoses of bilateral carpal tunnel syndrome. [Dr. Brock] noted the results of various objective studies…and physical findings including no evidence of muscle atrophy, normal grasp and manipulation, and only slightly decreased dynometric readings on the right hand side. He noted in particular the claimant's allegations in a pain questionnaire that he has four bad days per week with considerable throbbing pain and weakness on a regular basis, and that he experiences some help from pain medication that also causes him to feel drowsy, dizzy, and nauseated. [Dr. Brock] stated that these statements were only partially credible given the claimant's medically determined impairments, and in light of references in the treatment record to the claimant doing fairly well with no evidence of neurovascular compromise and no observable difficulty reaching, grasping or handling objects. He completed an assessment indicating that the claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently, and has limited pushing and pulling ability in the upper extremities. The reviewing physician reported that the claimant has limited ability to reach in all directions, and that he can only frequently lift overhead with the right upper extremity, and that he can perform bilateral fingering only frequently…. All of these findings were confirmed by a second reviewing physician….

(Tr. 24).

In his reply, Plaintiff challenges not only the ALJ's reliance upon Dr. Brock's

assessment, but on the underlying consultative exam performed by Dr. Fritzhand. He

argues that neither Dr. Brock nor Dr. Fritzhand had access to the RFC assessments of

Drs. Martinez and Kaleem. Because those later assessments were wholly unsupported,

however, the undersigned finds the fact that they were not reviewed by either Dr.

Fritzhand or Dr. Brock to be largely irrelevant.

In any event, the ALJ explicitly considered the "updated medical record" after Dr.

Brock's assessment, but determined that they did not require any change to Dr. Brock's

RFC assessment. (Tr. 25). Substantial evidence supports that conclusion. In July

2011, Plaintiff had full range of motion in both shoulders and full strength in both arms (Tr. 548-549) and in August 2011, he reported only "some" symptoms with his left hand, and that his pain was not more than 2/10 in his shoulder with use of ibuprofen (Tr. 546-547).

### 3. Credibility Assessment

Partially within the context of his second claim concerning testimony about his alleged left hand/wrist CTS, and more directly in his fourth assertion of error, Plaintiff contends that the ALJ improperly evaluated his credibility.  An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence.  *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

The ALJ stated that Plaintiff "was not a fully credible witness, and his testimony did not provide a credible basis for finding greater limitations…."  She gave multiple reasons for finding Plaintiff less than fully credible.  She pointed out that "[t]he record reflects that he was laid off from work due to decreased business activity…, which means that it was not limitations produced by his medical condition that caused him to stop working."  (Tr. 22).  The ALJ noted that Plaintiff

> continued to receive unemployment payments into 2009 and had a worker's compensation claim that was settled on November 19, 2009…. In order to receive unemployment compensation, he had to assert that he was ready, willing, and able to work, an assertion that obviously runs contrary to his current allegation that he has been totally disabled since November 1, 2008.  Also detracting from the claimant's credibility are the results of a toxicity screening performed in March 2009, showing an inconsistent reading with respect to the presence of opiates.

(Tr. 22).

In addition, the ALJ noted that Plaintiff had previously reported that the treatment he had received for grip deficit and myofascial pain had "helped tremendously," and numerous occasions within the treatment record reported that Plaintiff was "doing well" rather than complaining about ongoing pain as he did at the hearing.  (Tr. 22).  Other reasons stated by the ALJ for discounting Plaintiff's credibility included inconsistencies in the record concerning his alleged disability and his activity level, clinical records that recorded minimal subjective complaints and full strength in his hands and upper extremities, and the relative lack of records supporting complaints of back pain as opposed to upper extremity complaints:

> On January 27, 2009, the claimant reported experiencing an increase in hand pain after "shoveling snow"…. Less than a month later, on February 26, 2009, the claimant related having only mild, intermittent pain that "goes away" after a while…. Concerning references in the record to his performing physical activities such as shoveling snow or engaging in seasonal fishing…, the claimant stated that on the occasion that he tried to shovel snow his son eventually had to take over, and that he has only gone fishing a few times in the last few years, never for more than 30 minutes.  It appears that he was attempting to minimize as much as possible the appearance that his daily activity level and ability to perform certain physical tasks at a higher level of functioning than would be found if his testimony were to be credited.  Significantly, on many examination[s], the claimant was described as having full grip and motor strength.  The most consistent abnormal finding was diminished sensation.  During consultative physical evaluation in April 2010 the claimant demonstrated no difficulty reaching or handling….Although there is some slight reference to back pain in the record, the bulk of the treatment record relates the

difficulties in the claimant's upper extremities and hands, not with back pain….

(Tr. 22-23).

With respect to his complaints of bilateral CTS impairment, Plaintiff argues that the ALJ erred by rejecting his testimony of disabling limitations. Citing cases from other jurisdictions, Plaintiff argues that the ALJ was required to include all of the manifestations of his CTS impairment to which he testified, or "specifically reject this testimony for legitimate reasons." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). Plaintiff testified that he can use his hands just 15% of the day effectively, and cannot lift more than 5 pounds.[5] He testified that he drops things like the phone, silverware and dishes about once a week, and that he is unable to open a jar, pick up coins, or tie his shoes without "a problem." (Tr. 51).

The cited case law is not controlling in this Court, but even if it were, review of those cases does not reveal any error in the ALJ's credibility assessment in this case. Notwithstanding Plaintiff's selected quotations, the decisions do not require an ALJ to specifically reject each statement testified to by the Plaintiff with which the ALJ disagrees. In *Nguyen*, for example, the ALJ failed to discuss at all whether he was discounting the testimony of a claimant and his wife; the court reversed in part based upon the general proposition that an ALJ must expressly consider "lay testimony." Here, the ALJ did consider Plaintiff's testimony and explained why she did not find it to be fully credible. Moreover, the undersigned notes that Plaintiff also testified that he

---

[5]This alleged weight restriction is more restrictive than even the extreme assessments of Drs. Martinez and Kaleem. Plaintiff testified that a "Dr. Marin" gave that weight restriction. (Tr. 44).

does not see anyone for his right elbow complaints which has "gotten somewhat better," and that he sees no physician for his alleged shoulder pain. (Tr. 42). He also is not in treatment for his alleged right neck pain. (Tr. 43). He testified that he underwent physical therapy for his hands at the pain center for about a year, which was "helpful" but that he has not undergone therapy in the past year. (Tr. 47-48).

In his reply memorandum, Plaintiff additionally argues that the ALJ failed to account for some of the medical evidence supporting additional limitations on back pain, specifically referring to Tr. 294, 406, 425, and 552, as well as to a diagnostic code on two pages reflecting a hip deformity. (Tr. 399, 403). For the first time in his reply, Plaintiff argues that the ALJ should have included some unspecified "sitting restrictions." (Doc. 14 at 7). The undersigned finds this new argument to be procedurally improper.

To the extent that a reviewing court considers it, the argument should be rejected on the merits. The diagnostic code says nothing about Plaintiff's hip condition, which obviously did not prevent Plaintiff from working in the past. The four other pages in the record to which Plaintiff refers also fail to overcome the substantial evidence that supports the ALJ's determinations that: (1) Plaintiff did suffer from a "severe" back condition; (2) that condition limits him to "light" work; and (3) no additional postural limitations are required. The only two physicians who offered additional postural limitations were Drs. Martinez and Kaleem, whose opinions were properly rejected.

On the record presented, the ALJ articulated many valid reasons for discounting the Plaintiff's credibility. In his fourth statement of error, Plaintiff argues that the ALJ neglected to consider his 16 year work history with a single company as evidence of a "very good work history" which should have supported a positive credibility finding.

20

However, the ALJ was not required to discuss the length of Plaintiff's work history or his average earnings.  An ALJ is not required to explicitly discuss each and every possible factor that weighs for or against her credibility finding.  Here, not only is it clear that the ALJ considered multiple factors, but she expressly considered Plaintiff's work history, including that he had been laid off due to lack of work, not disability, and that he claimed unemployment benefits (requiring him to certify that he was able to work) well past his alleged disability onset date.  In his reply, Plaintiff argues that the "mere receipt of unemployment insurance benefits does not prove the ability to work."  Ironically, he cites *Kinsella v. Schweiker*, 708 F.2d 1058 (6th Cir. 1983), in which a dissenting judge cited Fourth Circuit case law for that proposition.  By contrast, the majority in *Kinsella* affirmed the ALJ's adverse credibility determination based in part on the claimant's unemployment application.  *See also Workman v. Com'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004)(citing *Kinsella,* holding that adverse credibility determination is supported by the filing of an application for unemployment benefits during the same time period).  Thus, the ALJ did not err in considering this factor as one among many that favored her adverse credibility determination in this case.

### 4.  Sustainability of Work and Number of Days Missed Per Month

As his last assertion of error, Plaintiff argues that the ALJ failed to adequately assess his ability to perform sustained work in an ordinary work setting on a regular and continuing basis.  The VE testified that missing 2 days or more a month would preclude Plaintiff from work.  Plaintiff argues that because both treating physicians opined that he would miss "more than 4 days of work per month," the ALJ should have accepted their opinions and found Plaintiff to be disabled.  The only evidence that Plaintiff would miss

more than four days per month was offered by the properly discredited opinions of Drs. Martinez and Kaleem. Therefore, it was not error for the ALJ to fail to include that limitation in the hypothetical posed to the VE.

### III. Conclusion and Recommendation

For the reasons discussed, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff SSI benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole, and that this case be closed.


　　　　　　　　　　　　　　　 */s Stephanie K. Bowman*
　　　　　　　　　　　　　　　Stephanie K. Bowman
　　　　　　　　　　　　　　　United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PAUL REED,                                              Case No. 1:13-cv-268

         Plaintiff,                                  Beckwith, J.
                                                                Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).