UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Paul D. Reed, : Case No. 1:13-cv-268
:
    Plaintiff, :
:
vs. :
:
Commissioner of Social Security, :
:
    Defendant. :

# ORDER

Before the Court are Plaintiff's objections to the Magistrate Judge's Report and Recommendations. (Doc. 16)  He objects to the Magistrate Judge's recommendation to affirm the final decision of the Commissioner denying Plaintiff's application for disability benefits. (Doc. 15)  For the following reasons, the Court overrules Plaintiff's objections.

## FACTUAL BACKGROUND

Paul Reed filed an application for disability insurance benefits on February 2, 2010, originally claiming a disability onset date of January 4, 2008.  Reed later amended the claimed onset to November 1, 2008.  Reed was born in 1959, and he worked for many years as a machinist and forklift operator in a steel plant.  He was laid off from his job in November 2008 due to a lack of work.  He received some unemployment benefits after that but he has not worked since he was laid off.

Reed had carpal tunnel release surgery on his right wrist in August 2002.  He also had surgery for a right shoulder rotator cuff injury in December 2004.  He returned to work after both of these surgeries.  Reed had an approved worker's compensation medical claim, and the record in this case establishes that he was receiving treatment

for his right carpal tunnel syndrome beginning at least by September 2006, including chiropractic care, physical therapy and pain medication management with Physicians Healthsource. (Exhibit 7F) On January 22, 2007, Reed reported that he had increased tolerance to grip and to repetitive activities at work, with increased strength and less numbness at night. (Id., CM/ECF PAGEID 409) And on March 22, 2007, after a four-week break between treatment visits, he reported increased pain due to work, and that his prior treatment for grip deficit and myofascial pain had "helped tremendously." He continued regular visits to Healthsource through 2008, reporting on December 29, 2008 that he was doing well. On January 27, 2009, he reported increased pain after shoveling snow. On February 26, 2009, he compared the higher pain level in his right hand to that of his left, "nonaffected hand." He continued monthly visits with Dr. Jose Martinez at Healthsource throughout 2009 and 2010; his notes reflect generally conservative treatment and pain medication management. Throughout most of that time, Reed was prescribed Percocet and ibuprofen.

Reed's disability application claimed impairments due to arthritis in his neck, shoulder and back; shoulder repair surgery; and bilateral carpel tunnel syndrome ("CTS"). (Ex. 2E) He was examined on April 28, 2010 by a state consulting physician, Dr. Martin Fritzhand. Reed reported at that examination that his 2002 carpal tunnel surgery "didn't help," and that he had neck pain since his 2004 shoulder surgery. He complained of pain in both shoulders and his right hand, and occasional low back pain. Dr. Fritzhand noted that Reed had a normal gait, and was comfortable both sitting and lying down. His range of motion was good, his upper extremity muscle and grasp strength was well-preserved, and his manipulative ability was normal bilaterally. There

-2-

was no evidence of muscle atrophy.  Dr. Fritzhand concluded that Reed "appears capable of performing at least a mild to moderate amount of sitting, ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects.  He had no difficulty reaching, grasping or handling objects. ... However, this assessment was made without benefit of imaging studies of the cervical spine."  (Ex. 5F at PAGEID 385)   A lumbar x-ray ordered by Dr. Fritzhand found some narrowing at L-4/L-5 and L-5/S-1, but otherwise was unremarkable.  (Id. at PAGEID 386)

A state reviewing physician, Dr. David Brock, conducted a records review on May 24, 2010.  He gave moderate weight to Dr. Fritzhand's clinical observations, and concluded that Reed's statements about the intensity of his symptoms and his ability to function were not consistent with the totality of the evidence.  (Ex.  6F at PAGEID 392) Dr. Brock concluded that Reed could occasionally lift 20 pounds, frequently lift 10 pounds, and could stand, walk and sit for about 6 hours a day.  His push/pull ability was limited in his upper extremities, and his ability to reach in all directions and for fingering (fine manipulation) was limited.  (Ex. 7F)

Dr. Martinez completed a physical residual functional capacity questionnaire on August 30, 2010.  (Ex. 8F)  Dr. Martinez reported that he saw Reed for routine monthly visits, each time for about 10 minutes.  Reed's prognosis was "good," with moderate pain in the right hand that was aggravated by increased use.  His clinical findings includes "constant" right wrist/hand pain, tenderness with intermittent swelling, weakness and numbness.  He also opined that Reed's depression, anxiety and "psychological factors" affected his physical condition, although these syndromes are not explained.  Dr. Martinez believed that Reed's condition would "constantly" interfere

with his attention and concentration in a typical workday, and that Reed was "incapable of even 'low stress' jobs." He further opined that Reed could not walk more than several blocks due to pain and "overall status." He could stand or walk for less than two hours, and sit for about two hours. Reed would need several unscheduled work breaks per day, and could only occasionally lift 10 pounds. Reed could use his right hand to grasp or turn objects only 5% of the time, manipulate his fingers only 10% of the time, and reach overhead only 5% of the time. Despite the lack of a diagnosis of left-side CTS, Dr. Martinez rated his left hand, fingers and arm as essentially nonfunctional, at 0% use for any activity.

Dr. Kallem, another physician with Healthsource (who apparently began treating Reed after Dr. Martinez retired), also completed an RFC questionnaire which is not dated but was submitted for the record on October 4, 2011. (Ex. 16F) It is not clear how many times Reed had seen Dr. Kallem prior the date of this questionnaire. Dr. Kallem's responses are essentially identical to those of Dr. Martinez, including a notation of psychological factors affecting Reed's physical condition.

Reed's disability claim was initially denied. He sought an ALJ hearing, which was held on October 6, 2011. Reed and a vocational expert testified. The ALJ issued her written decision on November 16, 2011. (Doc. 8, at PAGEID 45-56) The ALJ found that Reed has severe impairments of the upper right extremity, and arthritic back pain. These impairments do not meet or equal an impairment Listing. The ALJ found that Reed has the residual functional capacity for light work with additional restrictions. He is limited in his ability to push/pull to only 10-20 pounds; limited to frequent overhead lifting with the right upper extremity; and limited to frequent bilateral fingering. The ALJ

-4-

cited the vocational expert's hearing testimony that there were sufficient jobs within those limitations that Reed could perform to conclude that he was not disabled.

The Appeals Council denied Reed's appeal, and he sought judicial review in this Court. The Magistrate Judge concluded that the ALJ's decision was supported by substantial evidence in the administrative record, and rejected Reed's assertions of error. Reed has objected on several grounds, which are discussed in turn below.

**ANALYSIS**

Standard of Review

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's final decision by determining whether the record as a whole contains substantial evidence to support that decision. "Substantial evidence means more than a mere scintilla of evidence, such as evidence a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Secretary of Health and Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted). The evidence must do more than create a suspicion of the existence of the fact to be established. Rather, the evidence must be enough to withstand a motion for a directed verdict when the conclusion sought to be drawn from that evidence is one of fact for the jury. Id.

If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence. Elkins v. Secretary of Health and Human Serv., 658 F.2d 437, 438 (6th Cir. 1981). The substantial-evidence standard "... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial

evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The district court reviews de novo a Magistrate Judge's recommendations regarding Social Security benefits claims. Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

Bilateral CTS

Reed objected to the ALJ's conclusion that his impairment is limited to right-side rather than bilateral CTS, and to the ALJ's formulation of his residual function capacity that did not adequately account for left-side CTS. The Magistrate Judge concluded that any error in identifying impairments at Step 2 is harmless because the ALJ articulated other severe impairments and conducted a full sequential analysis, citing Maziarz v. Secretary of HHS, 837 F.2d 240, 244 (6th Cir. 1987). Moreover, while the ALJ did not find left-side CTS to be a severe impairment, her RFC formulation includes limitations on push-pull ability and fingering on both sides, as well as the restriction on right-side overhead lifting, that essentially moots this objection.

Reed objects to this conclusion. He contends that both the ALJ and the Magistrate Judge erred in refusing to give controlling weight to his treating physicians' opinions on his functional capacity. And he argues that there is objective evidence supporting left-hand CTS which, together with his treating physicians' opinions, amounts to substantial evidence that the ALJ disregarded.

In Social Security disability evaluations, a treating physician's opinion is to be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence

-6-

in [the] case record[.]" Rogers v. Commissioner of Social Sec., 486 F.3d 234, 242 (6th Cir. 2007). The ALJ must identify specific reasons for discounting a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. If the treater's opinion is discounted, 20 C.F.R. § 404.1527(c)(2) identifies factors the ALJ should address to determine the weight to be given to the opinion, including the length, nature and extent of the treating relationship; whether the opinion is supported by relevant evidence, and is consistent with the record as a whole; the specialization of the source; and any other factors that support or contradict the opinion. The regulations further state that, in considering any medical opinion, "... the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 404.1527(c)(4). More weight is generally given to an examining source than to a non-examining reviewer, but the weight accorded to any medical opinion must be based on the evidence that supports it, and its consistency with the record as a whole.

The ALJ assigned "virtually no weight" to Dr. Martinez's RFC assessment. The ALJ explained that his

> ... primary diagnosis is residual difficulty in the right wrist and hand since an injury in 2002 [yet the claimant worked for years at a job after 2002 which involved significant use of his hands]. ... Even though it comes from a physician who has provided ongoing medical care to the claimant, this assessment is given almost no weight. First of all, Dr. Martinez no longer sees the claimant, and when he did, he only treated the claimant for problems in the right hand. There is no reasonable basis for finding that right hand difficulties would affect the claimant's ability to sit, stand, or walk. There also is no mention in the treatment record from

> Dr. Martinez of any left hand difficulties nor of any
> psychological factors such as depression or anxiety.  In other
> words, Dr. Martinez listed significant limitations that could not
> be expected to arise from the claimant's established
> condition, including limitations arising out of psychological
> conditions that are not within his area of medical expertise.

(Doc. 8 at PAGEID 53)   And with respect to Dr. Kaleem, the ALJ found that his assessment "suffers from many of the same deficiencies as the assessment provided by Dr. Martinez."  (Id. at PAGEID 54)

The Magistrate Judge found no error in the ALJ's consideration of the opinions of both treating physicians.  Dr. Martinez's treatment records repeatedly refer to Reed's right-hand CTS with almost no documented complaints about left-side problems, much less any diagnosis or specific treatment of his left hand or wrist.  The Magistrate Judge found it almost incomprehensible that Dr. Martinez would find Reed's use of his right extremity to be greater than his left in view of those treatment records.  She further concluded that the ALJ adequately explained her reasons for rejecting Dr. Martinez's opinion, and that substantial record evidence supports that rejection.  This Court notes that while there are a few passing references to problems with his left hand, some of those may reflect an error. In particular, a chart note from a September 25, 2007 appointment with Dr. Khan at Healthsource states that Reed "continues to have severe left wrist pain" but "all other systems reviewed and found to be negative."  (Doc. 8, PAGEID 513)   Up to that date, Reed continually presented with right wrist pain, with no mention of the left.  Moreover, as noted previously, in February 2009 his treating physician referred to Reed's left hand as his "unaffected hand."

Reed also argues that he repeatedly complained of back pain, which supports Dr.

Martinez's limitations on standing, sitting and walking.  The records reflect a few complaints of back pain and occasional notation of tenderness or range of motion limitations.  But there is no evidence that Reed ever sought treatment for his back, and all of the clinical observations of his gait and his ability to sit and stand are normal.  Reed cites one reference to a diagnosis of "Coxa Vera" (ICD code 736.32), which he alleges is a deformity of the hip that results in shortening of one leg, causing a limp.  Dr. Martinez apparently wrote this diagnostic code on two chart notes from two visits in 2010, but there is no documented complaint of hip pain, no medical explanation provided for the code, and there are no clinical observations of Reed limping or having a shortened leg.  This unsupported notation on two occasions is not "substantial evidence" that supports Reed's argument.  And the ALJ may reject Dr. Martinez's opinion that Reed is "disabled" or unable to work, because that ultimate determination rests with the Commissioner under 20 C.F.R. §404.1527(e)(1).

      The Court agrees with the Magistrate Judge's conclusions.  The treatment notes signed by Dr. Martinez are primarily geared to assessing his medication compliance. (See, e.g., Ex. 7F at PAGEID 448-452)  There are discrepancies in some of these records; for instance, on February 17, 2010, Reed's intake form (completed by a staff member) notes his complaint as right CTS, with no change in status since his visit a month earlier on January 19.  (Ex. 7F at PAGEID 440)  On that same visit, Dr. Martinez noted that Reed "last worked 2009" and filed for SSI in January 2010, and he diagnosed "bilateral CTS."  (Ex. 7F at PAGEID 441)  This contradicts the intake note from that same day, and there are no clinical observations that support a problem with the left hand or wrist.  The same situation occurred for the April 2010 visit; the intake form notes

complaints only with his right hand, while Dr. Martinez noted bilateral CTS. (Ex. 7F at PAGEID 434-436) Then on the May 24 and June 24, 2010 visits, Dr. Martinez noted right-side CTS only, and made no comments about any left-hand problems. (Id. at PAGEID 432, 428.) These discrepancies are not explained. Moreover, as the Magistrate Judge aptly noted, it is difficult to understand how Dr. Martinez could opine that Reed's left hand function was worse than his right hand, in view of the consistent treatment for right-side CTS, and only a few references to left-side complaints. And there is little, if anything, in Dr. Martinez's treatment records supporting his opinions that Reed is severely limited in his functional capacity to walk, stand and sit. Similarly, Reed has never been diagnosed or treated for any psychological conditions, yet Dr. Martinez opines that he suffers from debilitating psychological syndromes.

     Reed cites Gayheart v. Commissioner, 710 F.3d 365 (6th Cir. 2013), which he contends illustrates the ALJ's error with respect to his treating physicians. The Court disagrees. There, plaintiff sought benefits based on several psychological impairments, including crippling panic attacks, depression and anxiety. The ALJ gave little weight to his treating psychiatrist's opinions and instead relied on the opinions of the state's testifying expert and reviewing consultants. The Sixth Circuit found that the ALJ failed to provide "good reasons" for his rejection of the treating physician's opinion. The ALJ found the opinions were "not well-supported by any objective findings." The court of appeals held that statement was ambiguous, because the ALJ did not explain whether the findings that were relied on by the psychiatrist (which were fully set forth in her RFC and were based on a four-year treatment relationship) were subjective, or if her findings were objective but her opinions were subjective. Furthermore, the court found that the

ALJ ignored conflicts between the testifying expert's opinion and the medical evidence. That expert first opined that plaintiff met the listing for anxiety related disorders. But at a second hearing, she testified to the opposite opinion, yet this change was not explained and the ALJ did not address it. He simply described the last opinion as well-reasoned and consistent with the non-examining reviewers. In addition, plaintiff's treating psychiatrist opined that plaintiff's episodic alcohol abuse was not the root of his problem, and that the severity and frequency of his psychiatric symptoms would persist even if he abstained completely. The testifying expert could not state that alcohol abuse was material to any finding of disability. Yet the ALJ concluded that the treating psychiatrist "minimized the impact" of the abuse, and that even if plaintiff was disabled, his incapacity could "only" be attributed to his alcohol abuse. Id. at 381.

      The ALJ's decision in this case does not suffer from these deficits. The ALJ fully explained the reasons she gave little weight to Dr. Martinez and Dr. Kaleem. The ALJ recognized that Dr. Martinez had treated Reed for some time, but that factor alone did not offset the stark contrast between his dire RFC assessment and the evidence of the nature and extent of the treatment he provided for Reed, or the lack of consistency between Dr. Martinez's opinion and the record as a whole. That conclusion applies even more strongly to Dr. Kaleem, as Reed's treating relationship with Dr. Kaleem was not long-standing when Dr. Kaleem rendered his opinions. The ALJ also noted the uncanny consistency between the two assessments, including a finding of bilateral CTS with no record of left-side CTS complaints or treatment. The ALJ's observations about the shortcomings of Dr. Martinez's opinions fully apply to those of Dr. Kaleem. The Court therefore rejects Reed's assertion that the ALJ applied a stricter standard of scrutiny to

the treating physicians than she did to the reviewing and examining physicians.

Reed also objects to the Magistrate Judge's failure to consider the recent evidence from October 2012 of electrodiagnostic testing that suggests moderate to severe left side carpal tunnel syndrome. (Ex. 17F) This evidence was not before the ALJ; Reed submitted it to the Appeals Council, which rejected his appeal and did not address this evidence. The Magistrate Judge noted that Reed did not seek a sentence six remand so that the ALJ might consider this new evidence.[1] And since this evidence was not before the ALJ, it is not part of the substantial evidence review. The Magistrate Judge alternatively found that recent clinical evidence of left-side CTS is insufficient to mandate additional work restrictions. The existence of what Reed describes as an abnormal study does not mandate an additional functional limitation on the use of his hands, as he suggests. The Magistrate Judge cited Dr. Gallagher's December 17, 2010 visit note, finding no atrophy in Reed's hands or fingers and no loss of strength. These same observations were made by Dr. Fritzhand in his April 2010 examination, where he found no atrophy, normal manipulation and flexion, and no problems with Reed reaching, grasping, or handling objects. The only contrary evidence in the record is Reed's subjective complaints and descriptions of his limitations, as he presented in his hearing testimony.

The Court fully agrees with the Magistrate Judge's assessment and conclusion. The October 2012 study is mirrored by the November 4, 2010 electrodiagnostic study, which was before the ALJ and which also noted evidence of a moderately severe left

---

[1] In his objections, Reed alternatively asks the Court to remand for consideration of this new evidence. (Doc. 16 at 5)

median neuropathy (CTS).  (Ex. 10F at PAGEID 547)  Following this test, he saw Dr. Gallagher and reported that a wrist splint helped decrease his symptoms at night, but he had some symptoms of pain and numbness.  And in July and August 2011, Reed saw Dr. Bertram at Healthsource; on both visits Dr. Bertram noted normal posture and gait, full range of motion in both shoulders and rated his strength in both upper extremities at 5/5.  He had some decreased sensation in his left median nerve but no abnormalities in his forearms or arms.  A Phalen's test was positive on the right and negative on the left, while Tinel's was negative bilaterally.  (Ex. 13F)

     In a related objection, Reed contends that the ALJ erred by relying on Dr. Fritzhand's examination to articulate his work limitations, because the vocational expert opined that Fritzhand's description of Reed's limitations was not specific enough to form an opinion on what jobs Reed might be able to perform.  The ALJ did not rely on Dr. Fritzhand's description of Reed's abilities, which the vocational expert testified were not specific enough.  She relied on Dr. Brock's assessment, and the vocational expert testified that there were jobs available that Reed could perform within the limitations set forth in that assessment.   Dr. Brock gave moderate weight to Dr. Fritzhand's clinical observations, and he also considered Reed's treatment records in formulating his RFC assessment.  Reed further suggests that Dr. Fritzhand (and Dr. Brock) only had six of the medical exhibits when they rendered their opinions, while the record contains 17 exhibits.  But Reed does not identify any new or substantively different clinical information that is contained in the additional exhibits.  And some of them are largely irrelevant, such as a referral for hernia surgery and the results of a hearing test.  The only "new" evidence are the two nerve studies from November 2010 and October 2012

concerning moderate to severe left-hand CTS.  And as discussed above, those studies do not alone support further limitations or restrictions on Reed's ability to use his left hand.

Credibility Assessment

Reed objects to the ALJ's consideration of his receipt of unemployment benefits in determining that Reed was not a fully credible witness.  The ALJ is not required to accept the testimony of a claimant that conflicts with the evidence in the record, and is not supported by any opinion or clinical assessment from a treating physician.  "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."  Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).  The ALJ's assessment, if properly explained and supported by substantial evidence, is entitled to deference from this Court.

The ALJ found that Reed's testimony was not credible to the extent that he claimed greater limitations in function than the ALJ's RFC assessment included.  The ALJ also noted that he was laid off from work due to lack of business, not because of any medical condition.  Finally, she noted that Reed received unemployment benefits and had settled his worker's compensation claim in November 2009.   Reed argues that the mere receipt of unemployment benefits does not establish that he is not disabled. But it was not the fact that he received benefits that the ALJ cited: it was the fact that in order to receive those benefits, Reed must attest that he is willing and able to work.  The ALJ found that assertion "obviously runs contrary to his current allegation that he has been totally disabled since November 1, 2008." (Doc. 8, at PAGEID 52)   The Court

finds no error in this conclusion. See Workman v. Comm'r of Soc. Sec., 105 Fed. Appx. 794, 801 (6th Cir. 2004)(noting that applications for unemployment and disability benefits "are inherently inconsistent"). Moreover, the ALJ did not rely solely on this observation, as she went on to discuss the contradictions between his testimony and the medical records. The Court finds no error in the ALJ's conclusions regarding Reed's credibility.

## CONCLUSION

For all of the foregoing reasons, the Court adopts the Magistrate Judge's Report and Recommendation in full. Plaintiff's objections to that Report (Doc. 16) are overruled. The Commissioner's decision denying Plaintiff's disability application is affirmed.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: May 6, 2014	s/Sandra S. Beckwith
Sandra S. Beckwith, Senior Judge
United States District Court